SVK

**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Anthony Aaron Cox, a/k/a Anthony[1] Rodriguez,

Plaintiff,

vs.

Dora Schriro, et al.,

Defendants.

No. CV 07-1094-PHX-DGC (MHB)

**ORDER**

Plaintiff Anthony Aaron Cox,[1] who is confined in the Arizona State Prison Complex-Florence, SMU II, filed this civil rights action against various officials of the Arizona Department of Corrections (ADC). Defendants Director Schriro, Deputy Warden Stewart, Facility Health Administrator (FHA) Greeley, and Dr. Sharp move for summary judgment. (Doc. #90.) Plaintiff's response and statement of facts were stricken for failure to comply with Local Rule of Civil Procedure 56.1(b) and (e). (Doc. #98.) The Court gave Plaintiff additional time to file a response that conforms to the requirements of the Local Rules. (Id.) Plaintiff did not file another response. The motion is ready for ruling. The Court will grant summary judgment and terminate the action.

**I.    Background**

The Complaint contains a single count in which Plaintiff alleged that, in violation of the Eighth Amendment, Defendants were deliberately indifferent to Plaintiff's serious

---

[1] The caption of this matter has been changed from Anthony Rodriguez to Anthony Aaron Cox. (Doc. #51.)

medical needs.  (Doc. #1.)  Plaintiff alleged that he has a life-threatening illness—hepatitis C, Stage 4, which includes cirrhosis of the liver.  He alleged that Schriro has policies and procedures that result in the denial of medical care based on budgetary concerns and that Stewart enforced these policies and procedures.  Plaintiff alleged that Defendants have denied him medical treatment for his condition by denying him a liver transplant or alternative treatments. He also alleged that he suffers from extreme fatigue, vomiting of blood, and loss of consciousness due to hypoglycemia and that Defendants have acted with deliberate indifference by refusing to transfer him to a medical facility better equipped to handle his medical needs.  Plaintiff alleged that Greeley and Sharp acted with deliberate indifference by denying treatment on the grounds that ADC has no protocol and ADC will not authorize a liver transplant due to budgetary concerns.  The Complaint seeks injunctive relief.

Defendants move for summary judgment on the ground that they were not deliberately indifferent to Plaintiff's medical needs.  They contend that (1) Schriro does not develop policies and procedures related to inmate health care, develop medical protocols, or handle moving an inmate from one housing location to another for medical reasons; (2) Stewart, the Deputy Warden of SMU II, did not oversee "Complex Medical," which is overseen by the Health Services Bureau at ADC Central Phoenix office, he does not create treatment protocols, and he does not approve or deny medical treatment or have authority to move Plaintiff to another housing location for medical reasons; (3) Greeley does not provide medical care, prescribe treatment or create medical policy and his involvement in Plaintiff's case was limited to responding to correspondence and forwarding consultation requests; and (4) Sharp and other ADC health care staff provided extensive and adequate medical care for Plaintiff's hepatitis.

## II.   Legal Standards

### A.   Summary Judgment

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine

1    issue as to any material fact and that the movant is entitled to judgment as a matter of law."

2    Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The

3    moving party bears the initial responsibility of presenting the basis for its motion and

4    identifying those portions of the record, together with affidavits, which it believes

5    demonstrate the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  The

6    burden then shifts to the opposing party who must demonstrate the existence of a factual

7    dispute and that the fact in contention is material, i.e., a fact that might affect the outcome

8    of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

9    (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

10   return a verdict for the non-moving party.  Id. at 250; see Triton Energy Corp. v. Square D.

11   Co., 68 F.3d 1216, 1221 (9th Cir. 1995).

12          Rule 56(e) requires the non-moving party to "set out specific facts showing a genuine

13   issue for trial" and not to "rely merely on allegations or denials in its own pleading."  Fed.

14   R. Civ. P. 56(e); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-

15   87 (1986).  The non-moving party need not establish a material issue of fact conclusively in

16   its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge

17   to resolve the parties' differing versions of the truth at trial."  First Nat'l Bank of Arizona v.

18   Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  Rule 56(c) mandates the entry of summary

19   judgment against any party who, after adequate time for discovery, fails to make a showing

20   sufficient to establish the existence of an element essential to that party's case and on which

21   the party will bear the burden of proof at trial.  Celotex, 477 U.S. at 322-23.

22          When considering a summary judgment motion, the court examines the pleadings,

23   depositions, answers to interrogatories, and admissions on file, together with the affidavits,

24   if any.  Fed. R. Civ. P. 56(c).  The judge's function is not to weigh the evidence and

25   determine the truth, but to determine whether there is a genuine issue for trial.  Anderson,

26   477 U.S. at 249.  The evidence of the non-movant is "to be believed, and all justifiable

27   inferences are to be drawn in his favor."  Id. at 255.

28   / / /

### B.     Claim for Medical Care

To prevail on a claim under the Eighth Amendment for inadequate prison medical care, a prisoner must demonstrate "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) that the defendant's response was deliberately indifferent. Jett, 439 F.3d at 1096 (citations omitted).  To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need. Jett, 439 F.3d at 1096.

Claims of "indifference," "negligence," or "medical malpractice" will not support a claim under § 1983.  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980). Inadequate treatment due to malpractice or even gross negligence does not constitute an Eighth Amendment violation.  Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  Moreover, differences in judgment between an inmate and prison medical personnel regarding an appropriate medical diagnosis or treatment are not enough to establish a deliberate-indifference claim.  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

## III.   Parties' Contentions

### A.   Defendants

In support of their motion, Defendants submit their Statement of Facts (Doc. #91, DSOF); the declarations of Schriro (id., Ex. B, Schriro Decl.), Stewart (id., Ex. C, Stewart Decl.), Sharp, including Plaintiff's medical records (id., Ex. D, Sharp Decl.), Greeley (id., Ex. E, Greeley Decl.), Michael Hegmann, ADC Deputy Medical Director (id., Ex. K, Hegmann Decl. ¶ 1), and James Baird, ADC Medical Program Director (Doc. #32, Ex. A, Baird Decl ¶ 1); and excerpts from Plaintiff's deposition (Doc. #91, Exs. F-J, L-S, U-V).

1    Plaintiff was diagnosed with hepatitis C in October 1996. (DSOF ¶ 21.) He was
2    readmitted to ADC, on October 17, 2002.  In addition to hepatitis C, Plaintiff has asthma,
3    epilepsy, and hypoglycemia.  (Id. ¶¶ 37-38.)  In June of 2005, after Plaintiff's transfer to
4    ASPC-Eyman, Sharp reviewed Plaintiff's chart, renewed his prescriptions, re-submitted
5    Plaintiff's consent for treatment (as well as the hepatitis C checklist) to Central Office, and
6    requested a referral for a liver biopsy.  (Id. ¶ 48-49.)  Because patients with hepatitis C are
7    often at risk for contracting hepatitis A and B, Sharp ordered that Plaintiff be given a
8    preventative vaccination against those strains.  (Id. ¶ 49-50.)  The vaccination was previously
9    ordered at the ASPC-Lewis Complex.  The first injection was administered to him on
10   May 11, 2005, and the second and third injections were administered at the ASPC-Eyman
11   on June 25, 2005, and November 26, 2005.  (Id. ¶ 50.)

12       On June 27, 2005, the Hepatitis C Committee recommended a FibroSURE2 for
13   Plaintiff instead of a liver biopsy.  (Id. ¶¶ 52, 54.)  Sharp requested the FibroSURE, which
14   was conducted on July 22, 2005. (Id. ¶ 52.)  The FibroSURE revealed F4-cirrhosis.  The
15   necrinflammation activity was Grade 3 – severe activity.  (Id. ¶ 53.)  Sharp instructed staff
16   to send the results of the FibroSURE to ADC Central Office.  (Id. ¶ 54.)  Based on those
17   results, a liver biopsy was approved.  (Id. ¶ 55.)  An August 2005 biopsy was rescheduled
18   because Sharp noted that Plaintiff was on aspirin/ibuprofen within two days of the scheduled
19   biopsy.  (Id. ¶ 61.)  The liver biopsy 2 Non-invasive blood test, which helps assess liver
20   status, was performed on November 9, 2005, and revealed cirrhosis (Stage 4), moderately
21   active (Grade 3).  (Id. at ¶ 62.)   Dr. McRill ordered hepatitis C treatment on February 7,
22   2006.  (Id. ¶ 64.)  She prescribed Pegylated Interferon and Ribavirin for forty-eight weeks.
23   (Id.)

24       Plaintiff's viral load prior to treatment was 3,170 IU/ml.  (Id. ¶ 66.)  Because he has
25   a genotype 1a, which has a low response rate to treatment, Plaintiff was tested at twelve
26   weeks to see if he was responding to treatment.  (Id. ¶¶ 24-25, 36, 78.)  When tested,
27   Plaintiff's viral load had increased to 8,400 IU/ml.  (Id. ¶ 78.)  Because he did not obtain a
28   two-log drop in his viral load, the treatment was not effective and was discontinued.  (Id.)

1   Sharp had a long talk with Plaintiff on June 6, 2006, regarding his non-responder status. (Id.
2   ¶ 79.)

3   After treatment was discontinued, Sharp regularly renewed Plaintiff's hypoglycemic
4   diet (id. ¶¶ 79, 82, 98-99,123-124, 146), continued to order lab work and tests to monitor
5   Plaintiff's hepatitis C condition (id. ¶¶ 84, 90-91, 95, 101, 106, 113, 125, 128, 132-133, 135,
6   143, 152, 155-156), saw Plaintiff on the chronic care line for his history of asthma and
7   seizures (id. ¶¶ 83, 108, 139, 152, 159), routinely renewed medication for his various
8   ailments and chronic conditions (id. ¶¶ 83, 86-87, 90, 93, 97, 102, 135, 139, 153-154), and
9   ordered other testing, as needed (id. ¶¶ 126-128, 132, 137, 147-149, 152-153).

10  When Plaintiff asked Sharp to transfer him to the Rincon Unit based on his medical
11  condition, Sharp accurately advised Plaintiff that Sharp does not control movement. (Id.
12  ¶¶ 100, 177.) When Plaintiff requested to be treated with supplements, Sharp forwarded his
13  requests to Central Office, which directs the overall treatment for hepatitis C. (Id. ¶¶ 35,
14  102.) These requests apparently were denied.

15  As to supplements, Hegmann attests that the clinical efficacy of milk thistle (thistles
16  of the genus Silybum Adans., flowering plants of the daisy family) is not clearly established.
17  (Id. ¶ 164; Hegmann Decl. ¶ 6.) Available evidence is not sufficient to suggest whether milk
18  thistle may be more effective for some liver diseases than others, or whether its effectiveness
19  might be related to the duration of therapy orchronicity and the severity of liver disease.
20  Until there is more known about the use of milk thistle in the treatment of hepatitis C,
21  Hegman explains, it will not be prescribed for ADC inmates. (Id.)

22  Baird attests that Liver Longer from ThermoLife International is currently only
23  marketed as a dietary supplement. (DSOF ¶ 165; Baird Decl. ¶ 33.) He has been unable to
24  find any studies regarding the use of this supplement in the treatment of hepatitis C. Until
25  more is known about the use of this supplement in the treatment of hepatitis C, Baird states,
26  it will not be prescribed for ADC inmates. (Id.) As to diet, Baird contends that a special diet
27  is not required with chronic hepatitis C and a high-protein diet is contraindicated because it
28  places a "huge metabolic load on the liver." (DSOF ¶ 161, Baird Decl. ¶ 30.) He also attests

1   that Plaintiff's Body Mass Index (BMI) places him in the "obese" category and no

2   responsible provider would prescribe a 4,500 calorie-a-day diet to Plaintiff. (DSOF ¶ 161;

3   Baird Decl. ¶ 30.)

4          On February 7, 2007, Sharp submitted an Outside Consult Request/Medical Review

5   Board form requesting that Plaintiff be evaluated for a liver transplant.  (DSOF at ¶ 109.)

6   Central Office responded that no patients were currently being added to the list at the

7   University of Arizona Medical Center.  (Id.  ¶¶ 109, 118.)  On March 14, 2007, Sharp had

8   a long discussion with Plaintiff regarding the fact that treatment options for nonresponders

9   were not proven.  (Id. ¶ 113; Sharp Decl. ¶ 60, Ex. 61.)

10         Thereafter, Sharp requested a GI consult.  (DSOF ¶ 126.)  Following the consult,

11  Sharp ordered a CT scan, EGD, and lab work.  (Id. ¶ 132.)  On September 27, 2007, Sharp

12  issued a memo to Plaintiff about his CT results.  (Id. ¶ 143.)  He also advised Plaintiff of the

13  results of his EGD. (Id. ¶ 151.)  Sharp requested another GI consult on October 25, 2007.

14  (Id. ¶¶ 147, 150.)  Following the consult with Dr. Merin, Sharp prescribed Inderal, as well

15  as ordered lab work.  (Id. ¶ 153.)

16         On February 21, 2008,  Sharp was directed by Central Office to request a GI consult

17  with Dr. Manch, Medical Director, Liver Transplantation, Banner Good Samaritan Medical

18  Center, to evaluate Plaintiff for a possible liver transplant.  (Id. ¶ 157.)  Dr. Manch saw

19  Plaintiff via a telemedicine consultation on February 27, 2008.  (Id. ¶ 158.)  Following this

20  visit, and upon review of additional treatment records, Dr. Manch noted that Plaintiff had

21  previously received twelve weeks of full-dose treatment with Pegasys and Ribavirin.  (Id.

22  ¶¶ 158, 160; Doc. #85, Attach. A, Ex. 1, Hepatology Progress Note, Dr. Richard Manch.)

23  His viral load actually increased during the course of therapy which indicates non-response

24  to the optimal therapy currently available.  (Id.)  Dr. Manch noted that Plaintiff would not

25  be a re-treatment candidate with currently available HCV agents. (Id.)  Dr. Manch concluded

26  that "[a]t this point, Plaintiff is well-compensated from a liver disease standpoint and would

27  be considered too early for transplant referral."  (Id.)

28

1    Defendants also assert that pursuant to state law, Director Schriro delegates the
2   running of inmate health services to the health Services Bureau Administrator, and that the
3   medical program Director develops policies and procedures related to inmate health care.
4   (Id. ¶ 4.)  She attests that she does not create medical treatment protocols and that the timing
5   and nature of health care are not dependent on budget considerations.  (Schriro Decl. ¶¶ 6,
6   8.)  Stewart was either the Deputy Warden of the Eyman SMU II or the Eyman Complex
7   during the relevant time period, he did not oversee Complex Medical, which is overseen by
8   the Health Services Bureau at the Central Office in Phoenix.  (DSOF ¶¶ 5, 7; Stewart Decl.¶
9    4)  Stewart attests that he did not have authority to move an inmate to other housing for
10  medical reasons.  (Stewart Decl. ¶ 6.)  As the FHA, Greeley plans, organizes and evaluates
11  the health care system for inmates, but he does not make decisions about medical issues or
12  direct medical treatment, which are made by an attending physician of other provider.
13  (DSOF ¶¶  9, 15; Greeley Decl. ¶¶  7, 8.)

14    **B.    Plaintiff**

15    Because a verified complaint may be used as an affidavit opposing summary judgment
16  if it is based on personal knowledge and sets forth specific facts admissible in evidence, the
17  Court will consider the allegations set forth in Plaintiff's Complaint.  Schroeder v.
18  McDonald, 55 F.3d 454, 460 (9th Cir. 1995).  Plaintiff alleged that Schriro has policies and
19  procedures that result in the denial of medical care based on budgetary concerns and that
20  Stewart enforced these policies and procedures.  Plaintiff alleged that Defendants have
21  denied him medical treatment for his condition by denying him a liver transplant or
22  alternative treatments.  Plaintiff alleged that Greeley responded to Plaintiff's requests by
23  claiming there is no ADC treatment protocol or that ADC will not authorize a liver transplant
24  due to budgetary concerns.  Plaintiff alleged that Sharp refused to provide comprehensive,
25  adequate medical care, maintenance therapies, alternative therapies, or transfer to a facility
26  better able to deal with Plaintiff's medical needs.  Plaintiff also suggested that he did not
27  receive a proper diet.

28  / / /

## IV.    Analysis

Defendants have met their burden of demonstrating that no material dispute of fact exists regarding their alleged deliberate indifference to Plaintiff's medical needs.  They proffer undisputed evidence that Plaintiff was seen, evaluated, and treated by medical staff, referred for a biopsy and other testing, provided treatment under the hepatitis C protocol, and ultimately referred to a liver specialist for evaluation for a liver transplant.  Schriro, Stewart, and Greeley also offer undisputed evidence that they had no involvement in determining the course of treatment, and Stewart and Sharp offer undisputed evidence that they were not responsible for Plaintiff's housing assignment.  Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976) (to prevail on a claim under § 1983, plaintiffs must allege that they suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant).  Plaintiff has not met his burden of demonstrating that a genuine issue of material fact exists as to these matters.

Plaintiff's hepatitis and cirrhosis of the liver are not disputed.  But to prevail on a claim for denial of medical care, Plaintiff must show more than a disagreement with the care he received.  Jackson, 90 F.3d at 332.  Plaintiff must demonstrate, through competent evidence, that there is a genuine dispute of fact regarding the adequacy of the treatment.[2] See Hutchinson v. United States, 838 F.2d 390, 393 (9th Cir. 1988) (granting summary judgment against a plaintiff who relied only on her own allegations and conclusory statements that defendants had been negligent, and who failed to provide affidavits or depositions of experts).  Although Plaintiff alleges that he did not receive adequate care, he does not dispute Defendants' assertions regarding the care provided. Moreover, Plaintiff was evaluated by an outside liver specialist who determined that Plaintiff was not a candidate for a liver transplant at this time.

Summary judgment is appropriate when a party fails to make a showing sufficient to establish the existence of an element essential to his case and on which he will have the

---

[2]This is also true to the extent that Plaintiff has asserted state negligence claims by requesting supplemental jurisdiction over state-law claims.  (Doc. #1 at 1.)

1   burden of proof at trial.  Celotex Corp., 477 U.S. at  322-23.  Plaintiff has failed to present

2   evidence from which a jury reasonably could conclude that Defendants acted with deliberate

3   indifference.  The Court therefore will grant summary judgment in favor of Defendants.

4       **IT IS ORDERED:**

5       1.    The reference to the Magistrate Judge is withdrawn as to Defendants' Motion

6   for Summary Judgment (Doc. #90.)

7       2.    Defendants' Motion for Summary Judgment (Doc. #90) is **granted**.

8       3.    This case is dismissed with prejudice, and the Clerk of Court is directed

9   to enter judgment accordingly.

10      DATED this 7th day of October, 2008.

_____
David G. Campbell
United States District Judge